**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
_____

JAMES THOMAS GREEN,

           Plaintiff,

           v.                                    13-CV-0394A
                                                      **DECISION AND ORDER**

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

           Defendant.
_____

      Plaintiff's attorney, Kenneth Hiller, has filed a motion for approval of his fee pursuant to 42 U.S.C. § 406(b). As discussed below, Hiller filed a lawsuit on Plaintiff's behalf contesting the Commissioner of Social Security's decision denying Plaintiff's application for Social Security benefits. Plaintiff and the Commissioner ultimately agreed that the case should be remanded. On remand, the Commissioner found in favor of Plaintiff and awarded him $90,007.88 in past-due benefits.

      Hiller now seeks 25 percent of that amount, as permitted by statute and as contemplated by Hiller's retainer agreement with his client. Before approving Hiller's fee, however, the Court is required to perform an "independent check" of the request. *Gisbrecht v. Barnhart*, 535 U.S. 789, 807 (2002). Upon such review, the Court "may . . . allow . . . a reasonable fee." 42 U.S.C. § 406(b). After its independent check, and for the reasons stated below, the Court finds that a fee of $15,000 is reasonable in this case. As discussed below, the Court also addresses a concern the Court previously raised about the billing records Hiller submitted in support of his motion.

1

## BACKGROUND

On April 22, 2013, an attorney at Hiller's firm (Docket No. 29 ¶ 2) filed a complaint in this Court pursuant to 42 U.S.C. § 405(g). The complaint sought review of the Commissioner's decision denying Plaintiff's application for Social Security Disability benefits and Supplemental Security Income benefits. *See* Docket No. 1. Several months later, Hiller filed a motion for judgment on the pleadings. Instead of filing a responsive cross-motion, the Commissioner stipulated that the case should be remanded for further administrative proceedings. *See* Docket No. 14. On remand, the Administrative Law Judge issued a decision in favor of Hiller's client. *See* Docket No. 21-3. Following that decision, the Commissioner determined that Hiller's client was entitled to $90,007.88 in past-due benefits. Docket No. 21-2 ¶ 14.

In March 2014, Hiller filed a motion for attorneys' fees under the Equal Access to Justice Act (EAJA), asserting that 34.3 hours were expended on this matter (including time spent preparing the fees motion) and requesting, based on the then-prevailing EAJA rate, $6,441.20 in fees. *See* Docket No. 17. Shortly thereafter, the Commissioner and Hiller stipulated to a fee award of $6,000. The Court then approved the parties' stipulation.

Approximately a year-and-a-half later, Hiller filed a motion for fees pursuant to 42 U.S.C. § 406(b), which is now before the Court. Hiller's motion states that he has not received his $6,000 EAJA fee because the Internal Revenue Service applied that fee towards a debt owed by Hiller's client. Hiller therefore seeks to recover $22,501.97, which represents 25 percent of the $90,007.88 in past-due benefits his client was awarded. Hiller's 25 percent request is permitted by § 406(b). It is also contemplated

by a contingent-fee provision in the retainer agreement between Hiller and his client. *See* Docket No. 21-6.

In support of his § 406(b) motion, Hiller includes the same billing records he included in his EAJA motion. As noted, that record indicates that 34.3 hours were "expended in this case"—that is, in proceedings before this Court, and not before the Commissioner. Docket No. 21-2 ¶ 16. Hiller then asserts that the "reasonable value of [his] work is $295.00 per hour," which "is the rate that [he] normally charge[s] and ha[s] been paid in similar cases." *Id.* ¶ 19.

## DISCUSSION

### A. Standard for awarding fees under § 406(b)

The Social Security Act allows an attorney who successfully represents a Social Security claimant "before the court" to petition that court for "a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment." 42 U.S.C. § 406(b). The Supreme Court has held that § 406(b) "calls for court review of [contingent-fee] arrangements as an independent check[] to assure that they yield reasonable results in particular cases." *Gisbrecht v. Barnhart*, 535 U.S. 789, 807 (2002). Towards that end, "Congress has provided" courts with "one boundary line: Agreements are unenforceable to the extent that they provide for fees exceeding 25 percent of the past-due benefits." *Id.* (citing 42 U.S.C. § 406(b)).

"Within the 25 percent boundary," an attorney must show that "the fee sought is reasonable for the services rendered." *Id.* In other words, an attorney's fee is not presumptively recoverable simply because it is equal to or less than 25 percent of the

3

client's recovery. Rather, § 406(b) "requires an affirmative judicial finding that the fee allowed is 'reasonable.'" *Id.* n.17 (internal quotation marks omitted). "[T]he attorney bears the burden of persuasion that the statutory [reasonableness] requirement has been satisfied." *Id.*

The Supreme Court has identified several factors that a court may use to assess the reasonableness of a contingent fee requested under § 406(b). First, a court may consider "the character of the representation and the results the representative achieved." *Id.* at 808. Second, a court may reduce an attorney's requested fee if the court finds that the attorney is responsible for delay in obtaining a judgment. That is, because the attorney's fee is contingent on his client's recovery of past-due benefits, and because past-due benefits increase the longer a case lingers, the court may appropriately reduce a fee "so that the attorney will not profit" from delay that is attributable to him. *Id.* And third, a court may reduce a fee if the court concludes that the benefits recovered—which drive the size of an attorney's potential fee—"are large in comparison to the amount of time counsel spent on the case." *Id.*

The Supreme Court and the Second Circuit have also identified two factors that act as a check on a court's reduction of an attorney's requested fee under § 406(b).

First, courts must be mindful of the reality that "payment for an attorney in a social security case is inevitability uncertain." *Wells v. Sullivan*, 907 F.2d 367, 371 (2d Cir. 1990). Thus, the Second Circuit has "recognized that contingency risks are necessary factors in determining reasonable fees under § 406(b)." *Id.* (internal quotation marks omitted). In other words, while "contingent fee agreements cannot simply be adopted as *per se* reasonable in all social security cases," courts should

4

recognize that "a contingency agreement is the freely negotiated expression both of a claimant's willingness to pay more than a particular hourly rate to secure effective representation, and of an attorney's willingness to take the case despite the risk of nonpayment." *Id.*

Second, "the traditional lodestar method, borrowed from fee-shifting contexts, is not appropriate for evaluating a reasonable fee" under § 406(b). *Id.* Thus, the Court may not evaluate the "reasonableness" of the attorney's fee by engaging in "satellite litigation." *Gisbrecht*, 535 U.S. at 808. The Court should instead evaluate "the reasonableness of the contingency agreement in the context of the particular case." *Wells*, 907 F.2d at 371.

Putting these principles together, a court's task under § 406(b) is, on the one hand, to "give due deference to the intent of the parties," but, on the other hand, to "not blindly approve every fee request made pursuant to a contingent agreement." *Wells*, 907 F.2d at 372. At bottom, a court should consider "whether there has been fraud or overreaching in making the agreement," or "whether the requested amount is so large as to be a windfall to the attorney." *Id.*

### B. Whether Hiller's requested fee is "reasonable" under § 406(b)

With these principles in mind, the Court assesses the reasonableness of Hiller's requested fee of $22,501.88. The Commissioner states that she sees no evidence of fraud or overreaching.[1] Docket No. 27 at 1. Given that Hiller's request is based entirely

---

[1] Fees requested pursuant to § 406(b) come from the attorney's client's recovery. They do not come, as in they do in the EAJA context, from the public fisc. Thus, unlike a claim for fees under the EAJA, the Commissioner "has no direct financial stake in the answer to the § 406(b) question; instead she plays a part in the fee determination resembling that of a trustee for the claimants." *Gisbrecht*, 535 U.S. at 798 n.6.

5

on a provision in his standard retainer agreement, the Court agrees with the Commissioner. Hiller's standard retainer agreement, which he has submitted in other fee applications before the Court, raises no questions or concerns about "fraud or overreaching." Rather, it simply contemplates that Hiller might recover 25% of his client's recovery, as § 406(b) expressly allows him to do.

The primary question, then, is whether Hiller's requested fee would amount to "a windfall" given the amount of work he performed before the Court, the quality of that work, the complexity of the legal and factual issues, and the contingent nature of Social Security cases. There is no "clear set of criteria for determining when an award may result in a windfall," but courts have identified several relevant factors. *Joslyn v. Barnhart*, 389 F. Supp. 2d 454, 456 (W.D.N.Y. 2005). For instance, courts may consider "whether the attorney's efforts were particularly successful for the plaintiff"; "whether there is evidence of the effort expended by the attorney demonstrated through pleadings that were not boilerplate and through arguments which involved both real issues of material fact and required legal research"; and "whether the case was handled efficiently due to the attorney's experience in handling social security cases." *Id.* at 456-57. The Court has considered these factors, as well as those discussed above, in assessing "the reasonableness of the contingency agreement in the context of th[is] particular case." *Wells*, 907 F.2d at 371.

First, and most obviously, Hiller's "efforts were," without question, "particularly successful" for his client. *Joslyn*, 389 F. Supp. 2d at 456. Hiller's client recovered (prior to a potential reduction for Hiller's fee) just over $90,000 in past-due benefits. It is also clear that the successful outcome Hiller obtained for his client would not have occurred

unless this lawsuit had been filed; after the Commissioner found that the Plaintiff was not "disabled," the only way Hiller could have overcome that outcome was to file suit in this Court. Similarly, Hiller's expertise in this area of law surely played a significant role in his client's success.

Second, however, the Court has considered the fact that the Commissioner stipulated to remand—and litigation in this Court ended—after Hiller filed his motion for judgment on the pleadings. Thus, the substantive legal work Hiller performed before this Court consisted primarily of reviewing the ALJ's decision and the administrative record, filing a standard page-and-a-half complaint, and researching and drafting a motion for judgment on the pleadings. To be clear, the Court does not minimize the importance of these tasks to providing competent, skilled representation, as Hiller's firm routinely does. Nor does the Court suggest that Hiller spent too much time on these tasks—such a consideration is, of course, inappropriate under § 406(b). Rather, the Court simply notes the work Hiller performed before the Court so that it can better evaluate whether his requested fee is "reasonable" under § 406(b).

The amount of substantive work Hiller performed before the Court is also relevant because the successful outcome Hiller obtained for his client hinged as much on Hiller's performance on remand as it did on his performance before the Court. Only the latter, however, is compensable under § 406(b). Hiller may also separately apply for fees for his work before the Commissioner. *See* 42 U.S.C. § 406(a); Docket No. 21-1 at 2. ("If and when Plaintiff's counsel makes such an application [for fees under § 406(a)], he will not collect more than 25% of the claimant's past due benefits.") *See also Porter v. Commissioner of Social Security*, No. 8:06-CV-1150(GHL), 2009 WL 2045688, at *2

(N.D.N.Y. July 10, 2009) (considering work at both the administrative level and in court to assess reasonableness under § 406(b)); *Brown v. Barnhart*, 270 F. Supp. 2d 769, 772-73 (W.D. Va. 2003) (where attorney spent approximately 12.3% of his overall time on matter before district court, reducing requested fee by approximately 30%).

Third, and most significantly, the Court cannot ignore the fact that Hiller previously stipulated to an EAJA award of $6,000 for the same work at issue in his § 406(b) motion. This provides the Court with a rough baseline of what a "reasonable" fee might be in this case. Balanced against that fact, however, the Court must consider the Second Circuit's reminder that a contingency agreement, which is the basis for the fee Hiller requests in his motion, "is the freely negotiated expression both of a claimant's willingness to pay more than a particular hourly rate to secure effective representation, and of an attorney's willingness to take the case despite the risk of nonpayment." *Wells*, 907 F.2d at 371. As this case amply demonstrates, the nature of Hiller's work presents the routine possibility that he will receive *no* fee for his work, either because he is ultimately unsuccessful or because, as occurred in this case, his stipulated EAJA fee is used to satisfy a debt Hiller's client owed to the IRS. Thus, in assessing whether Hiller's requested fee is reasonable under § 406(b), the Court is very cognizant of the fact that Hiller assumes the risk of nonpayment in all of his Social Security matters.

Hiller asserts that his requested fee of $22,501.97 accounts for this contingency. This is so, Hiller argues, primarily because statistics show that, in this District, he has a 34.2% chance of successfully appealing an adverse determination from the Commissioner.[2] Hiller bases this approximation on a study Hiller performed of his own

---

[2] Hiller also assets that "only 66% of cases are granted on remand," based on a 2007 report from the Government Accountability Office. Docket No. 21-1 at 4. Thus, Hiller argues that his true chance of

cases in this Court from 2008 through 2011. *See* Docket No. 21-1 at 5; Docket No. 21-2 at ¶ 21. These figures are dated, but based on the Court's experience, they appear to provide a reliable-enough estimate of the chance of success in a Social Security appeal in this District. Thus, if Hiller had a 34.2% chance of a successful outcome, and if the previously-agreed-to reasonable value of his work in this case is $6,000, then a fee of $17,543.86 adequately accounts for the contingent risk Hiller bore in taking this case.[3]

For several reasons, the Court finds that reducing this fee to $15,000 produces a "reasonable" fee in this case for purposes of § 406(b). First, in evaluating the contingent risk of non-payment in this case, the Court has considered the fact that the Commissioner stipulated to remand immediately after Hiller filed his motion for judgment on the pleadings. Hiller, in other words, likely had a stronger-than-usual case. And, as a result, the contingent risk of nonpayment was lower. A smaller fee is therefore warranted. *See McGuire v. Sullivan*, 873 F.2d 974, 984 (7th Cir. 1989) ("A finding of riskiness is an essential one in granting a full twenty-five percent contingent fee award in a social security case. The trial court must determine whether the contingency percentage requested was reasonable in light of the risk, the hours of legal work necessary to complete the case and the skill and reputation of the attorney."); *Coppett v. Barnhart*, 242 F. Supp. 2d 1380, 1383 (S.D. Ga. 2002) ("A contingency fee is more likely to be reasonable the greater the risk that the claimant would not prevail.")

---

success was 22.57%, i.e., a 66% chance of success before the Commissioner after a 34.2% chance of obtaining a remand. Section 406(b), however, only allows the Court to award fees based on a lawyer's work before the Court—not before the Commissioner. Thus, the chance of success on remand is irrelevant to the Court's consideration of Hiller's contingent risk before the Court.

[3] The Court arrives at this figure by dividing 1 by .342, which equals approximately 2.923977. Multiplying that number by $6,000 equals $17,543.86.

Second, the Court concludes that the $90,007.88 in past-due benefits Hiller recovered for his client is "large in comparison to the amount of time counsel spent on the case." *Gisbrecht*, 535 U.S. at 808. To account for both of these facts, as well as for the reasons discussed above, *see supra* at 7-8, the Court discounts Hiller's contingent-adjusted $17,543.86 fee to $15,000. The Court finds that $15,000 is a "reasonable" fee "in the context of the particular case." *Wells*, 907 F.2d at 371.

## CONCLUSION

Kenneth Hiller's motion for attorneys' fees pursuant to 42 U.S.C. § 406(b) is granted in part. As discussed above, the Court finds that Hiller is entitled to recover $15,000 for his work on this case before the Court. Thus, from the $22,501.97 that the Commissioner has withheld from Plaintiff's past-due benefits award, the Commissioner shall release $15,000 to Kenneth Hiller.

Lastly, the Court addresses an issue the Court previously raised during its review of Hiller's § 406(b) motion. As the Court noted in a prior Order (Docket No. 28), Hiller's billing records in support of his motion were difficult to reconcile with the filings in this case.[4] It would therefore be prudent, in all future requests for attorneys' fees (under both § 406(b) and the EAJA), for Hiller to (1) indicate whether other individuals

---

[4] Specifically, Hiller's declaration in support of his motion requests an hourly rate of $295 for "my work" (Docket 21-2 ¶ 19), strongly suggesting that Hiller himself performed all tasks itemized in his billing records. The docket for this case, however, shows that another attorney, Jaya A. Shurtliff, Esq., entered an appearance in this matter. Ms. Shurtliff also signed the complaint. After the Court entered an Order directing Hiller to respond to this apparent discrepancy (Docket No. 28), Ms. Shurtliff filed a declaration stating that "of the work shown on Mr. Hiller's time affidavit (Exhibit 21-2), [Ms. Shurtliff] performed those entries dated prior to September 1, 2013." Docket No. 29 ¶2. Hiller likewise submitted a declaration acknowledging that Ms. Shurtliff "performed the work detailed in my time record previously filed with this Court." Docket No. 29-1 ¶ 2. These statements are irreconcilable with Hiller's earlier suggestion that he himself performed all of the work listed in his first declaration. It matters which attorney performed the work in this case. Hiller's suggestion that he performed all of the work listed in his first declaration means that his proposed hourly rate of $295, rather than a presumably lower rate for a less-experienced attorney, should be applied to all time expended on the matter.

(including, but not limited to, attorneys, paralegals, and clerical staff) performed any work itemized in Hiller's billing records, and (2) indicate the individualized billing rate for each individual listed, or whether a blended billing rate is utilized for all timekeepers.

**SO ORDERED.**

Dated: August 11, 2016                                       s/Richard J. Arcara
     Buffalo, New York                                HONORABLE RICHARD J. ARCARA
                                                        UNITED STATES DISTRICT JUDGE